

**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*

*United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts 02210*

December 24, 2003

John Salsberg, Esq.
Salsberg & Schneider
95 Commercial Wharf
Boston, MA 02110

    Re:  United States v. Juan Montero,
           Criminal Case No. 03-10349-WGY

Dear Mr. Salsberg:

    Pursuant to Fed. R. Crim. P. 16 and Rules 116.1(C) and 116.2 of the Local Rules of the United States District Court for the District of Massachusetts, the government provides the following automatic discovery in the above-referenced case:

A.    <u>Rule 16 Materials</u>

1.    <u>Statements of Defendant under Rule 16 (a)(1)(A)</u>

    a.    <u>Written Statements</u>

    There are no relevant written statements of the defendant in the possession, custody or control of the government, which are known to the attorney for the government.

    b.    <u>Recorded Statements</u>

    Consensual tape recordings were made of telephone conversations involving the defendant. These recordings are available for your review at the U.S. Attorney's Office. Copies of the recordings, along with preliminary English-language transcripts, will be provided to you shortly.

    c.    <u>Grand Jury Testimony of the Defendant</u>

    The defendant did not testify before a grand jury in

John Salsberg, Esq.
December 24, 2003
Page 2

relation to this case.

    d.    <u>Oral Statements to Then Known Government Agents</u>

The government is currently unaware of any oral statements made by the defendant before or after arrest, in response to interrogation by a person then known to the defendant to be a government agent, which the government intends to use at trial. In the event I learn of any such statements, I will notify you.

2.    <u>Defendant's Prior Record under Rule 16 (a)(1)(B)</u>

A copy of the defendant's criminal record was provided to you by the Pretrial Service Agency at the defendant's initial appearance. I will provide another copy upon request.

3.    <u>Documents and Tangible Objects under Rule 16(a)(1)(C)</u>

All books, papers, documents and tangible items which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial of this case, or were obtained from or belong to the defendant, may be inspected by contacting the undersigned Assistant U.S. Attorney and making an appointment to view the same at a mutually convenient time.

4.    <u>Reports of Examinations and Tests under Rule 16 (a)(1)(D)</u>

Enclosed is a two-page DEA-7 report reflecting the chemical analysis of drugs seized from CW-1 (as defined below) on June 5, 2002, and June 6, 2002, at Logan Airport.

B.    <u>Search Materials under Local Rule 116.1(C)(1)(b)</u>

A consent search of CW-1 (as defined below) and CW-1's baggage was conducted at Logan Airport on June 5, 2003 and June 6, 2003, by the U.S. Customs Service. The government does not intend to provide discovery bearing on the legality of this search because the defendant lacks standing to contest its legality.

C.    <u>Electronic Surveillance under Local Rule 116.1(C)(1)(c)</u>

No oral, wire, or electronic communications of the defendant

John Salsberg, Esq.
December 24, 2003
Page 3

as defined in 18 U.S.C. § 2510 were intercepted relating to the charges in the indictment.

D.  **Consensual Interceptions under Local Rule 116.1(C)(1)(d)**

Telephone conversations between the defendant and CW-1 (as defined below) were tape recorded with CW-1's consent on June 5, 2003. The conversations are in Spanish and are in the process of being preliminarily transcribed and translated. Copies of the recordings and of the preliminary transcripts will be provided to you shortly.

E.  **Unindicted Coconspirators under Local Rule 116.1(C)(1)(e)**

As to the conspiracies charged in Counts One and Three of the indictment, the government declines at this time to disclose the names of known unindicted coconspirators because the government is still investigating those individuals and it would therefore be detrimental to the interests of justice to make the disclosure.

F.  **Identifications under Local Rule 116.1(C)(1)(f)**

The defendant was a subject of an investigative identification procedure used with several witnesses whom the government anticipates calling in its case-in-chief involving a photo spread. A copy of the photo spread used in the identification procedure will be provided upon request.

G.  **Exculpatory Evidence Under Local Rule 116.2(B)(1)**

With respect to the government's obligation under Local Rule 116.2(B)(1) to produce "exculpatory evidence" as that term is defined in Local Rule 116.2(A), the government states as follows:

1.  The government is unaware of any information that would tend directly to negate the defendant's guilt concerning any count in the indictment.

2.  The government is unaware of any information that would cast doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief and that could be subject to a motion to suppress or exclude.

John Salsberg, Esq.
December 24, 2003
Page 4

    3.    Promises, rewards, or inducements have been given to two witnesses whom the government anticipates calling in its case-in-chief. These witnesses -- CW-1 and CW-2 -- have signed cooperation agreements with the government stating that, in exchange for truthful information and testimony and substantial assistance in the prosecution of another, the government will consider filing a section 5K1 motion and/or recommending a reduced sentence. CW-1 and CW-2 have both pleaded guilty to felony drug offenses in federal court, and their respective sentencing hearings have been delayed at the government's request.

    The government declines to identify CW-1 or CW-2 at this time because doing so would unnecessarily jeopardize their safety as well as the government's ongoing investigation of this matter.

    4. & 5.    CW-1 and CW-2 have no prior convictions; both have pending felony drug cases in which they have pleaded guilty and are pending sentencing.

    CW-3, another possible government witness, has prior convictions and may have a pending drug charge. The government declines to identify CW-3 or provide additional details about his/her criminal record at this time because doing so would unnecessarily jeopardize CW-3's safety as well as the government's ongoing investigation of this matter.

    6.    No percipient witness failed to make a positive identification of the defendant with respect to the crimes at issue.

H.    <u>Other Matters</u>

    For your information, the government alleges that in or about April 2002, your client offered CW-2 $5,000 to travel to Spain and/or the Netherlands to pick up ecstasy pills and smuggle them into the United States. CW-2 refused the offer (although CW-2 later accepted a similar offer from another person, was caught with the ecstasy pills, pleaded guilty to a federal drug charge, and is pending sentencing). CW-2 knew your client as "Chacho" and identified him from a photo spread.

    Subsequently, your client offered CW-1 $5,000 to travel to Spain and/or the Netherlands to pick up ecstasy pills and smuggle them into the United States. CW-1 accepted the offer and

John Salsberg, Esq.
December 24, 2003
Page 5

traveled to Spain for approximately one week. CW-1 arrived back at Logan Airport on June 5, 2002, with approximately 12,000 ecstasy pills weighing approximately 2.5 kilograms on his/her person and in his/her luggage. CW-1 agreed to attempt a controlled delivery of the pills to your client, whom CW-1 knew only as "Chacho." CW-1 called your client using a number your client had provided and had consensually recorded telephone conversations with him. Your client refused to come to the Airport, so the controlled delivery attempt was abandoned.

CW-1 pleaded guilty to federal drug charges arising from the seizure of ecstasy from CW-1 at Logan Airport and is awaiting sentencing. Like CW-2, CW-1 positively identified your client from a photo spread.

CW-3 was present when your client recruited CW-1 and participated in that effort. Like CW-1 and CW-2, CW-3 knew your client as "Chacho" and identified him from a photo spread. No promises, rewards, or inducements have been made to CW-3. The government has not indicted CW-3 for his/her role in recruiting CW-1, but it also has made no promises not to do so.

Enclosed is a report reflecting toll information for telephone number 781-526-3028 for the period May 1, 2002 through July 11, 2002. The government alleges that this phone -- a prepaid cell phone with no subscriber information -- was used by your client.

If this matter goes to trial, the government intends to introduce evidence that your client was ordered deported from this country, adopted several false identities, and lived as a fugitive until his recent arrest. A copy of your client's immigration file was previously provided to you.

The government is aware of its continuing duty to disclose newly discovered additional evidence or material that is subject to discovery or inspection under Local Rules 116.1 and 116.2(B)(1) and Rule 16 of the Federal Rules of Criminal Procedure.

The government requests reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure and Local Rule 116.1(D).

John Salsberg, Esq.
December 24, 2003
Page 6

    Please feel free to call me at 617-748-3222 if you have any questions.

                              Very truly yours,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                By:     /s/ William Weinreb
                            WILLIAM D. WEINREB
                            Assistant U.S. Attorney

enclosures
cc:   Elizabeth Smith
      Clerk to the Honorable William G. Young (w/o enclosures)